IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUSAN LEIGH ANDERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-781-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Leigh Anderson seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is reversed.

## Background

Plaintiff alleges that she is disabled due to a variety of ailments, including osteoarthritis, fibromyalgia, diabetes, atrial flutter, joint pain, hand pain, anxiety, depression, bone spurs in her neck, and hypertension. *See* Administrative Record [Dkt. Nos. 15 & 16 ("Tr.")] at 186, 191, 192, 196, 276. After her applications for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on December 9, 2013. *See id.* at 177-204. At the time of the hearing, Plaintiff was 53 years old. *See id.* at 181. She is a high school graduate, has a cosmetology license, and has past work experience as a bookkeeper and wire transfer clerk. *See id.* at 181-85, 200.

Plaintiff has not engaged in substantial gainful activity from May 1, 2011, the alleged onset date, through December 31, 2013, the date last insured. *See id.* at 29.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 37. Although the medical evidence established that Plaintiff suffered from diabetes mellitus, hypertension, spondylosis, osteoarthritis, and depression, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 29. The ALJ further determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work and could perform her past relevant work as a bookkeeper and wire transfer clerk. *See id.* at 34, 36.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that: (1) the ALJ relied on answers to hypothetical questions that did not reasonably incorporate all of the limitations that the ALJ recognized; (2) the ALJ's determination that Plaintiff has the residual functional capacity ("RFC") to perform detailed work is contrary to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), because no physician reported that Plaintiff was capable of detailed work and it does not reflect the function-by-function analysis required by SSR 96-8p; (3) the ALJ improperly rejected her treating physician's opinions; and (4) the ALJ failed to develop the record to obtain clarification from Plaintiff's treating physician.

2

The Court determines that the hearing decision must be reversed and the case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the

4

> claimant's age, education, work experience, and residual functional
> capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be

6

established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

<u>The ALJ failed to properly consider the treating physician's opinions.</u>

Plaintiff contends that the ALJ erred by not considering the 20 C.F.R. § 404.1527 factors before declining to give weight to the opinions of her treating physician, Robert J. Meador, M.D., who completed a Physical Residual Functional Capacity Questionnaire on July 14, 2013. *See* Tr. at 809-11.

Dr. Meador found that, in an eight-hour workday, Plaintiff could sit for no more than one hour, stand/walk for no more than one-half hour, and lie down/recline for no more than two hours. He also found that Plaintiff could sit for only thirty to sixty minutes and stand for only twenty minutes at a time without needing to change position and would continuously need the flexibility to change positions. Dr. Meador explained that Plaintiff "cannot sit or stand for prolonged times due to sciatic pain and myalgias." Dr. Meador found that Plaintiff could occasionally lift up to ten pounds but could never lift more than that due to limitations from "severe pain from sciatic nerve pain" and that Plaintiff was limited in repetitive action involving pushing and pulling because "she is weak due to pain from myalgias and arthritis."

Dr. Meador also found that Plaintiff's degree of pain was severe and would preclude the activity precipitating the pain, that the pain would continuously interfere with attention and concentration, and that Plaintiff could constantly need rest periods during the day. And Dr. Meador found that Plaintiff would probably miss work four or more days a month due to exacerbation of pain or symptoms.

In determining Plaintiff's RFC, the ALJ gave Dr. Meador's opinions "no weight." *Id.* at 36. According to the ALJ,

> The claimant's physical examinations and complaints to treating sources show improvement. There is no confirmation in the record (as the x-rays only showed spondylosis) to support weakness due to pain from myalgias and arthritis that would support the limitations assessed. It appears that Dr. Meador may have relied on symptoms that the claimant mentioned to him, but were not included in the records.

*Id.* Contrary to the work-related limitations found by Dr. Meador, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work. *See id.* at 34. In sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983); *see also* 20 C.F.R. § 404.1567(a).

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Section 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Id.* at 456. Specifically, the ALJ must consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(c)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in

deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998). In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456.

But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

Similar to the facts in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Newton*, 209 F.3d at 458. Here, the ALJ rejected Plaintiff's treating physician's opinions without an existing controverting treating or examining physician opinion. Therefore, pursuant to *Newton*, the ALJ was required to consider each of the Section 404.1527(c) factors prior to rejecting Dr. Meador's opinions.

The ALJ did recite, with no further elaboration, that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527" as well as other regulations. *See* Tr. at 34. But this statement, on its own, is not sufficient to satisfy

*Newton. See Nicaragua v. Colvin*, No. 3:12-cv-2109-G-BN, 2013 WL 4647698, at \*6 (N.D. Tex. Aug. 29, 2013).

Defendant argues that the ALJ did consider the Section 404.1527(c) factors. At Step 2, the ALJ noted that Dr. Meador treated Plaintiff for joint pain. *See* Tr. at 30-32. On April 5, 2012, Dr. Meador performed a physical examination in which he found joint tenderness and lordosis but no clubbing, cyanosis, edema, or deformity in Plaintiff's extremities. Plaintiff had full range of motion in all joints and 5/5 strength. In her back, Plaintiff had tenderness in the right and left cervical and lumbar paraspinals and the right and left SI joints. Palpation of her knees revealed right and left medial joint line tenderness. Dr. Meador recommended back exercises. *See* Tr. at 30.

On May 1, 2012, x-rays of Plaintiff's lumbar spine showed mild multilevel spondylosis, and x-rays of her cervical spine showed loss of normal cervical lordosis and multilevel cervical spondylosis. *See id.*

On October 4, 2012, Plaintiff saw Dr. Meador for a follow-up after the x-rays and reported that her symptoms had worsened. Dr. Meador performed a physical examination in which he found joint tenderness, bursal tenderness, lordosis, and diffuse achiness but no clubbing, cyanosis, edema, or deformity in the extremities. Neurologically, there were no focal deficits, and Plaintiff had normal reflexes, coordination, muscle strength and tone but with dysesthesias. Dr. Meador stated that Plaintiff had multiple tender points consistent with fibromyalgia syndrome, which might be exacerbated by arthritis and personal stressors. *See id.*

On September 5, 2013, Plaintiff reported to Dr. Meador that she felt better. Dr. Meador performed a physical examination in which he found joint tenderness, bursal tenderness, lordosis, and diffuse achiness in the upper shoulder region and hip bursal region. Plaintiff had normal reflexes, coordination, and muscle strength and tone with dysesthesias. Palpation of the back revealed tenderness in the right cervical and lumbar paraspinals, SI joints, left cervical and lumbar paraspinals, and left SI joints. Dr. Meador prescribed medication and advised active back exercises. *See id.* at 32.

Defendant argues that, in this analysis, the ALJ considered the factors of type of relationship, frequency of examination, and nature and extent of treatment. Defendant also argues that the ALJ considered the factors of support in the record and consistency with the record as a whole. At Step 3, the ALJ found that "[t]he objective medical evidence does not support a finding of disability." *Id.* at 35. The ALJ explained that, "[a]s noted by Dr. Meador on July 14, 2013, x-rays of the cervical spine and the lumbar spine only showed spondylosis. There is no other evidence in the record to support a finding of disabling weakness due to pain from myalgias and arthritis." *Id.* Based on his review of medical notes that showed "tenderness was the most cited finding," the ALJ found that "[t]he same conclusion is appropriate for Dr. Meador's finding of severe sciatic nerve pain." *Id.*

To support these findings, Defendants cite to evidence in the record. But the ALJ did not discuss that evidence, and "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455. "Reviewing courts do not consider rationales supporting an ALJ's

decision that are not invoked by the ALJ." *Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 907 (N.D. Tex. 2008). Moreover, medical notes that do not give an opinion on Plaintiff's physical limitations in the workplace or what activities she would be able to perform do not controvert the opinion of Plaintiff's treating physician. *See Jackson v. Astrue*, No. 4:10-cv-150-Y, 2011 WL 816850, at *9 (N.D. Tex. Feb. 15, 2011).

And, as to the last factor, Defendant argues that there is no indication that Dr. Meador was a specialist. But the ALJ did not mention this factor in his decision, and the Court is unable to determine if he considered it.

The ALJ's decision fails to show that he conducted a detailed analysis of Dr. Meador's opinions in accordance with the requirements of Section 404.1527(c). The ALJ did not even enumerate the Section 404.1527(c) factors, let alone discuss them in any sufficient level of detail. *See Tolbert v. Astrue*, No. 4:10-cv-349-L, 2011 WL 3759049, at *7 (N.D. Tex. Aug. 24, 2011). While the ALJ's short narrative discussion of Dr. Meador's opinions may have mentioned facts relevant to the factors of type of relationship, frequency of examination, and nature and extent of treatment, it fails to make clear that the ALJ actually considered those factors. And, even if he did, his conclusory statements that Dr. Meador's opinions were not supported by objective medical evidence or other evidence of record fail to provide the detailed analysis necessary to show that he considered the factors of support in the record, consistency with the record as a whole, and the treating physician's specialty, if any, and do not show good cause for rejecting Dr. Meador's opinions concerning Plaintiff's work-related limitations. *See id.*

The ALJ failed to properly consider Dr. Meador's opinions, which found disabling work-related limitations. As a result, the error is not harmless because, if the ALJ had given more weight to Dr. Meador's opinions, he may have found Plaintiff disabled.

Because the Court concludes that the ALJ's failure to properly consider the treating physician's opinions was prejudicial, it will not address Plaintiff's argument that the ALJ failed to develop the record by contacting Dr. Meador for clarification. The ALJ will have the opportunity to address the sufficiency of the record on remand. The ALJ's RFC was not supported by substantial evidence.

The ALJ determined that Plaintiff has the RFC to perform the full range of sedentary work and, specifically, that Plaintiff is able to perform detailed but not complex work tasks. *See* Tr. at 34. Plaintiff contends the ALJ erred in finding that she has the RFC to perform detailed work because that finding is not supported by a physician's opinion and there was no function-by-function analysis to support it. Defendant does not address Plaintiff's argument that there was no physician opinion to support the RFC finding that Plaintiff is able to perform detailed work.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers*, 238 F.3d at 620. The RFC refers to the most that a claimant is able to do despite her physical and mental limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether a claimant can work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Generally,

14

an ALJ should request a medical source statement that describes the types of work a claimant can still perform. *See Ripley*, 67 F.3d at 557. But the absence of such a statement is not reversible error if the ALJ's decision is nevertheless supported by substantial evidence. *See id.* Reversal is warranted only if the claimant shows that she was prejudiced. *See id.*

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *See id.* The Court of Appeals court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem but did not clearly establish the effect that condition had on his ability to work. *See id.* The Fifth Circuit therefore remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on is ability to work. *See id.* at 557-58. The Fifth Circuit panel rejected the Commissioner's argument that the medical evidence substantially supported the ALJ's conclusion because the Court of Appeals was unable to determine the effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

Dr. Meador's opinion concerning Plaintiff's physical limitations is the only medical opinion evidence in the record regarding the effects of Plaintiff's severe impairments on her ability to work. Julie Duncan, Ph.D., conducted a psychological evaluation and diagnosed Plaintiff with recurrent and severe major depressive disorder, panic disorder, pain disorder, and a global assessment of functioning of 50.

15

*See* Tr. at 405-09. While Dr. Duncan's report demonstrates an impairment, it does not indicate how that impairment affects Plaintiff's ability to work.

The ALJ was not entitled to simply rely on his own opinion of the medical evidence to determine the effects of Plaintiff's condition on her ability to work. *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("[A]n ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."); *Nesbitt v. Colvin*, No. 3:12-cv-98-BN, 2013 WL 5299261, at *5 (N.D. Tex. Sept. 20, 2013) ("While the ALJ may choose to reject [a doctor's] opinions, she cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*."). Yet that is exactly what the ALJ did.

Nor was the ALJ's error harmless. Had he obtained an expert medical opinion about the types of work activities that Plaintiff could still perform given her mental impairments, it might have changed the result of the ultimate disability determination. The ALJ relied on answers to improper hypothetical questions.

Plaintiff contends the ALJ's determination that she was able to perform past relevant work was based on answers to improper hypothetical questions to the vocational expert ("VE"). The ALJ found that Plaintiff has the RFC to perform the full range of sedentary work and expressly found that she is able to perform detailed but not complex work. *See* Tr. at 34. Based on the RFC for sedentary work, the ALJ found

that Plaintiff was capable of performing past relevant work as a bookkeeper and wire transfer clerk. *See id.* at 36. In making that finding, the ALJ expressly relied on the testimony of a VE. *See id.* According to Plaintiff, the VE based his testimony on defective hypothetical questions that did not include a limitation to detailed but not complex work, which was recognized by the ALJ in the hearing decision.

A hypothetical question to a vocational expert cannot provide substantial evidence supporting the denial of benefits unless: (1) the hypothetical reasonably incorporates all the claimant's disabilities recognized by the ALJ; and (2) the claimant or her representative is afforded the opportunity to correct deficiencies in the question. *See Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Where an ALJ finds that a claimant is not disabled based on answers to a defective hypothetical, substantial evidence does not support the finding, and the case should be reversed and remanded for further administrative proceedings. *See Bridges v. Comm'r of Soc. Sec. Admin*, 278 F. Supp. 2d 797, 807 (N.D. Tex. 2003).

At the administrative hearing, the ALJ asked the VE about the skill and exertional levels of Plaintiff's past relevant work. The ALJ testified that Plaintiff had past relevant work as a bookkeeper, DOT 210.382-014, which is sedentary work at specific vocational preparation ("SVP") level 6, and as a wire transfer clerk, DOT 203.562-010, which is sedentary work at SVP level 4. *See* Tr. at 200; *see also* DICOT 210.382-014 (G.P.O.), 1991 WL 671821 (Bookkeeper); DICOT 203.562-010 (G.P.O.), 1991 WL 671692 (Wire Transfer Clerk).

The ALJ then asked the VE if there were jobs that could be performed by a person of Plaintiff's age, education, and work experience who was limited with the following restrictions: sitting no more than six hours in an eight-hour day; standing and walking no more than six hours out in an eight-hour day; and lifting no more than 20 pounds occasionally and ten pounds frequently. The VE testified that such a person would be able to perform the full range of light work. In a follow-up hypothetical, the ALJ added the limitation of being restricted to simple one-to-two step, repetitive tasks that can be learned in thirty days or less. Again, the VE testified that such a person could perform work at the light level and specifically identified the jobs of cashier, office helper, or counter clerk. *See* Tr. at 201-02.

Based on this testimony, and specifically the VE's testimony "that [Plaintiff's] past work as a bookkeeper ... was skilled, sedentary work and her work as a wire transfer clerk ... was semi-skilled, sedentary work," the ALJ found that Plaintiff could perform the full range of sedentary work and "is able to perform detailed but not complex work tasks." *Id.* at 34. The ALJ then found that Plaintiff could perform past relevant work as a bookkeeper and wire transfer clerk. *See id.* at 36. But these findings were based on hypothetical questions posed to the VE that did not incorporate the ability to perform detailed tasks. *See id.* at 200-03. As a result, the hypothetical questions were defective. *See Boyd*, 239 F.3d at 707 (disability determination is not supported by substantial evidence if hypothetical to vocational expert does not incorporate all functional limitations found by the ALJ); *Easterling v. Astrue*, No. 3-10-CV-0963-BD, 2011 WL 4424389, at *3 (N.D. Tex. Sept. 22, 2011).

18

Defendant does not directly address Plaintiff's argument that the hypothetical questions posed to the VE did not include the limitation to detailed work found by the ALJ in his decision. And Defendant does not address, and seemingly concedes, that Plaintiff cannot perform past relevant work as a bookkeeper, which is classified as skilled work, but argues that she can perform work as a wire transfer clerk, which is classified as semi-skilled. Defendant argues that the regulatory definition of semi-skilled work contemplates that an individual can perform detailed work activities but not complex work. According to 20 C.F.R. § 404.1568(b),

> [s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

But reliance on inferences drawn from the statutory definition belies the fact that the ALJ's hypothetical questions to the VE inquired about simple, repetitive one-to-two step tasks learned in thirty days or less, not detailed work. And the use of the word "detailed" in the Dictionary of Occupational Titles, which was used by the VE to identify jobs, is not equivalent to the word "detailed" as used in the Social Security regulations. *See Zapata v. Colvin*, No. 4:13-cv-340-Y, 2014 WL 435243, at *10 (N.D. Tex. Sept. 2, 2014).

Moreover, the VE testified that the hypothetical person described in the ALJ's questions could perform light work, which refers to exertional level. *See* SSR 00-4p,

19

2000 WL 1898704, at *3. And, while a person who can perform detailed work presumably could also perform simple, repetitive one-to-two step tasks, it does not follow that the opposite is true.

Defendant also argues that the record supports the ALJ's RFC finding that Plaintiff can perform detailed work because it shows that Plaintiff can grocery shop, manage money, use a computer, drive, and manage her diabetes. *See* Dkt. No. 20 at 6. But, as previously stated, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455. "Reviewing courts do not consider rationales supporting and ALJ's decision that are not invoked by the ALJ." *Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d at 907; *see also Hernandez v. Astrue*, No. A-11-CA-071 LY, 2011 WL 4915859, at *5 (W.D. Tex. Oct. 12, 2011).

Because the ALJ's unfavorable decision was based on the VE's answers to defective hypothetical questions, substantial evidence does not support the ALJ's finding that Plaintiff was not disabled. And, because there was no discrepancy until the ALJ issued his written decision finding that Plaintiff's RFC was limited to sedentary work with the ability to perform detailed but not complex tasks, Plaintiff did not have a "fair opportunity" to correct the hypothetical question at the administrative hearing. *See Reynolds v. Colvin*, No. 7:12-cv-0065-O-BF, 2014 WL 1243682, at *5 (N.D. Tex. Mar. 25, 2014).

**Conclusion**

The hearing decision is reversed and this case is remanded to the Commissioner

of Social Security for further proceedings consistent with this opinion.[1]

DATED: January 25, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.